Consolidation Coal Company v. The Workers' Compensation Commission 5100116 With respect to this case, Counsel, we are missing two judges again. We were curious to see if there would just be one left by the time we got to the fifth case. Well, Judge Wexton decided to go to Chicago for something, and Chris Holdridge is involved in a matter of puriots this morning. So they're not able to be here, but they will be active participants in the decision-making process. They'll have the benefit of, they have had the benefit of reviewing all the briefs. They've had the benefit of reviewing the record. The oral arguments presented today will also be available to them. And they, as I've indicated, will be active participants in the decision-making process. Please proceed. Hi, please support. My name is Cheryl Intervalle. I'm here on behalf of Consolidation Coal Company. There are three issues that are on appeal in this occupational disease case, the first being Section 1F, the second being Section 6C, and the third being the award of benefits that was made by the arbitrator and affirmed by the commission majority. What this case basically comes down to is statutory interpretation. And basically, the general facts in this case are that Mr. Eubanks left the mine on May 30, 1998. He filed his case for benefits or his claim for benefits on May 2, 2003. The chest film was first read in July of 2003. He gets examined by their expert in April of 2004. He gets examined by our expert in June of 2005. And out of all of this evidence, along with his medical records that are in this, in the record, the commission found that he met the timely disablement requirement of Section 1F, that notice was sufficient, and they awarded 7.5% manageable to Mr. Eubanks. The problem with the commission majority's decision is you can take each separate issue, but they don't reconcile between the three. And here's what I'm talking about. The main question that I'm asking this Court to review is, when was Mr. Eubanks disabled for purposes of his claim? Because the decision from the majority seems to indicate that he was actually disabled in May of 1994, which is when Dr. Alexander, that's the date of the film that Dr. Alexander reviewed that was a NIOSH film. Now NIOSH read the film as negative, and it stayed in the mind, but obviously Dr. Alexander read it differently. So we have that as a positive finding for Colbert's pneumoconiosis, or we have the chest film that's almost 10 years later from April of 2003, which Dr. Alexander also read as positive for Colbert's pneumoconiosis. And the question is, when was he disabled? Under Section 1F, you have to prove disablement within two years after your last date of exposure. That puts us at 2000. If you want to rely on the 1994 film and say he was disabled four years before he left the blindness center via, so clearly he was timely disabled, that's fine, I can live with that. But then we have to go to the second issue on appeal, which is notice, which says you're supposed to provide notice to the employer as soon as practicable after disablement. So if he's disabled in 1994, and our notice is when he files his claim in May of 2003, we're looking at nine years. Is it all or nothing proposition, however? The claimant testified that he had symptoms that were consistent with CWP prior to leaving the coal mine, did he not? His symptoms were shortness of breath, which had to do with an underlying cardiac condition. And in all honesty, Your Honor, the only condition that Mr. Eubanks would be entitled to benefits for would be coal workers pneumocloniosis itself, because his claim was filed over three years after he left the mine. So being that he filed it in the same month almost five years later, all he can get benefits for is CWP. Now, if you look at his treating doctors who noted that he had shortness of breath, you'll see that his treating physicians attributed to his cardiac condition. And once again, that really doesn't help us trying to figure out when he was disabled. In any event, that's a fair question for the Commission, is it not? Yeah, but they don't answer it. So that makes it a little more difficult. Is it fair to say that any coal miner that suffers from coal workers pneumocloniosis is disabled? No. Is it not? Well, not if you're going to look at the facts in this case. Dr. Alexander said that he had it in 1994. He worked there until 1998. Clearly he wasn't disabled. We know he worked with the disabled, but that wasn't my question. My question is, is it fair to say that anyone who has coal workers pneumocloniosis is disabled from work as a coal miner? Well, if you have a doctor that says you have coal workers pneumocloniosis and you should avoid further exposure to coal dust so that it does not accelerate, progress, get worse, you could consider that to be disablement. But there are, you know, obviously in this case he did continue to work. And so it puts us back to statutory interpretation. Section 1E defines disablement as an impairment or partial impairment, temporary or permanent, in the function of the body or any of the members of the body or the event of becoming disabled from earning full wages at the work in which the employee was engaged when he was last exposed to the hazard of the occupational disease by the employer from whom he or she claims compensation or equal wages in other suitable employment and disability means the state of being so incapacitated. So yes, it is possible that a diagnosis of coal workers pneumocloniosis would be considered disabled. But that wasn't my question. My question is, can it fairly be said that anyone who has coal workers pneumocloniosis is in fact disabled from working in a coal mine? Coal workers pneumocloniosis is not contracted by many means other than coal dust, can you? That's correct, Your Honor. And any further exposure to coal dust progresses the disease, does it not? It's a possibility. It doesn't always progress it, but yes, it can happen. And that's the concern. He finds that additional coal mine dust exposure endangers the health by risking progression of the stuff scarring in fibers of the lung. It's a risk, Your Honor. Not everybody has the progression, but it is a risk. Can you be cured of coal workers pneumocloniosis? Am I what? Can you be cured of it? No, not a true diagnosis of it. No, you cannot. So I suppose the question, just because a person continues working after they're disabled, does that mean they're not disabled? It seems to be your argument. Well, the argument is, when was he disabled? I mean, if you've got three statutes sitting here in the Occupational Disease Act that regulate everything that happens here, and one says you've got approved disablement within two years of your last date of exposure, and another one says, oh, hey, you're supposed to tell the employer, give them notice as soon as practicable after disablement, and we're dealing with someone who left the mine in 1998, and the first diagnosis of coal workers pneumocloniosis isn't until 2003, and the case is filed in 2003, I mean, you can compartmentalize each one of them, but you cannot reconcile. Where's your prejudice? Where's your prejudice? Well, if you look at the White case, prejudice doesn't come into play unless notice was timely filed. Well, it just says as soon as practicable. What does that mean? Well, if you said, Ms. Indravaya, I'd like you to go out in the hallway and get me a piece of paper as soon as practicable, well, I think if I did it in four years and 11 months, I don't think that would cut it for you. Well, let's talk about that. Notice under the case law can be provided by the filing of an application of claim. Is that correct? That is correct, Your Honor. That's the Crane case. All right. And in Crane, there was a one-year statute of limitations, and the guy was misdiagnosed. They thought he had tuberculosis. He did not have tuberculosis. He had silicosis, and he was diagnosed with silicosis three months after they let him out of the sanitarium. So we're dealing with a 15-month period as opposed to an almost five-year period. But where there is an allegedly defective or insufficient notice, doesn't the element of prejudice still come into play? Don't you have to show that you were prejudiced by the notice you did receive? Only if you're going to say that notice wasn't timely. That's what the White case says, is notice was not timely. And what the arbitrator said in this case and what the majority affirmed was notice was sufficient. And how do you get as soon as practicable? If you're going to say he was disabled when he left the mine, which is essentially what the commission and the arbitrator have said, how does as soon as practicable become four years and 11 months later? Assuming for the sake of the argument, I'm holding that issue in abeyance for the moment. The two purposes of notice, as we understand it, I believe, is the facilitation of prime medical attention and the opportunity, perhaps in this case, for immediate investigation. If your position has been maintained from day one that he didn't have and never had CWP, what would be the difference then when you got notice? Well, Your Honor. Your bereader says he doesn't have it. He never had it. Well, my bereader does not believe that. And NIOSH didn't think he had it either. And they were charged with the job of looking at x-rays to decide if people needed to be put in a less dusty area of the mine. But that doesn't matter because the commission basically has said we are going to rely on Dr. Alexander and Dr. Gerber. So I can't very well stand here in front of you and say they picked the wrong ones, Your Honors, because that doesn't work. So the issue becomes, okay, if we're going to rely on Dr. Gerber and Dr. Alexander, who made the first diagnosis over five years after he left the mine, and the other guy, Dr. Gerber, doesn't examine him until six years almost after he left the mine, but then we're going to say, oh, but we're going to read this 94 film and the notice doesn't come until 2003, they don't blend. The whole purpose of the statute says you need to prove disablement within two years of your last date of exposure. Okay, so you have a two-year window here that you're supposed to be proving this in. We're going to extend the statute of limitations for five years for coal workers' pneumoconiosis. But then you also have a statute that says you need to provide notice to the employer as soon as practicable. And all of these have to be read in conjunction together. And I guess, well, I don't guess. The reason this case is before you is because you cannot reconcile these three statutes, which clearly are balanced on a finding and a date of disablement. But there is no date of disablement. Your citation to the White case suggests that prejudice is pertinent only where some notice is provided in the first place. He gave you some notice. He filed a claim. That's some notice. And the statute does not agree with your interpretation. The statute says if the commission finds that failure to give such notice, the such notice is notice as soon as practical, practicable. Substitute the phrase. If the commission finds that failure to give notice as soon as practical after the date of disablement substantially prejudices the rights of the employer, the commission then in its discretion can bar the petition. And that's the same statute as what they have in the Workers' Compact, except the Workers' Compact was kind enough to actually put a date in. Yeah, but unfortunately in this particular case he gave notice. He gave you notice. He filed a claim. You can say he did. Well, you can say he did, Your Honor, but it's not as soon as practical based on the date of disablement. I mean, look at the White case. The White case the guy had a repetitive. Well, wait a minute. But at that particular point in time he got a proof of prejudice. Where's your prejudice? The White case specifically said you did not. No, that's not what the White case says. The White case says the statutory element of undue prejudice to the employer is pertinent only where some notice is provided in the first place. What is some notice? And they go on to say that the notice that was provided in the White case was untimely because it was beyond the 45-day limit. Accordingly, notice of disablement as soon as practical is required before any finding of prejudice can be addressed is not found in the White case. That's your interpretation of the White case. No, the White case is under the Workers' Compensation Act. Your phrase here is not found in the White case. Your argument is your argument. It's not supported by White. White doesn't talk about this. White does talk about it because White specifically states that his notice wasn't provided within 45 days, Your Honor. Go to your next argument. You and I are beating heads against the wall. Go to your next argument. Your Honor, that is my argument. That you cannot have the statutory definition of disablement and have everything stem from the statutory definition of disablement and have all of these time periods that are supposed to run from a finding of disablement, but you have no actual finding of a date of disablement in this case. Is it in 1994? Is it in 1998? Is it in 2003? Is it in 2004? Because that's what we're looking at. And basically what you're telling me, Your Honor, with regard to White and saying that it's not applicable, then my question simply becomes, then what value does that statute even have under the Occupational Disease Act? It's very simple. It has none. Part and parcel of your argument has to be prejudiced. And if you don't make a prejudiced argument, you lose on notice because you get notice when he files his claim. Just that simple. That's exactly what it means and it gives meaning to both phrases. Well, Your Honor, if you're basically going to let somebody file a claim one month before the five-year statutory limitations go, there's no point in even having a notice statute under the ODA. And that's what essentially you are telling me. As long as his claim is timely filed, he has met the requirement of notice, which now makes the notice requirement completely irrelevant. Not unless you can prove prejudice. You're entitled to have him barred. Prove prejudice. But you have the burden. But you're saying that he is always going to be as soon as practicable as long as it's timely filed. That's not what I said, ma'am. What I said was if he files within the statute of limitations and you get notice of the filing within the statute of limitations, as you do when he files the claim, you have a burden of showing prejudice before you can bar him. Just that easy. And you did introduce no evidence of prejudice whatsoever. I respectfully disagree. I don't think the statute has any meaning if that's the interpretation that you give it. I think you're basically making a statute of limitations, and as long as you have filed your claim within the five years, you've met the notice requirement, thereby rendering 6C completely invalid, and that would make it unconstitutional. Thank you, Your Honor. Thank you, counsel. Counsel, please. Mr. Ressort, not to direct your argument, but it is hanging out there. At some point, can you address Ms. Introvalla's rhetorical question of how these limitation periods mesh together? She says they do not. Can you answer the overarching question of how you can reconcile all of these provisions? I didn't mean to put you on the hot seat just before you got up to the bench, the podium, however. No, I was sitting there listening to that argument, and I was focusing in on notice, and you just asked me the statute of limitations question. And I'm sorry, I just didn't understand. Okay. She said that there's no way to reconcile all of these time periods with notice, with statute of limitations. Are you able to provide an argument that reconciles these provisions? Yes. I think that the basis of her inability to reconcile them is that she's paid to not reconcile them and does not wish to reconcile them. They're actually very simple because they operate separately like a mobile. The statute of limitations is five years. You must give notice as soon as practicable after you find out you've got the disease, but you have to give that notice within five years. Then you have another burden, which we argued about in 1992 and lost, that you then have to prove that you have some disablement within two years. Now, the question that Justice Hoffman asked is the key here, and for the last five or six years all doctors testify to this because I ask them all, and that is if you have pneumoconiosis, you have to have disablement. And you have to have both functional disablement and the medical contraindication of further exposure. Now, the functional disablement is because all pneumoconiosis is scars, what you see on x-ray is scars, and scar tissue can't do what normal lung tissue does. Everybody in this record said it. I shouldn't point to other records that say it. Everybody in this record says that. Now, it's also explained that those scars occur in an area that's hard to measure. So if all you have is pneumoconiosis, you probably can't measure it, but it's not because it's there, because you can see it. The second thing that everybody always says is if you have pneumoconiosis, you can't go back to that coal mine. And again, this ties in with Justice Hoffman's question. There are only three ways that pneumoconiosis can progress. The scars that are already there can keep growing, whether you're exposed or not. I mean, once that process starts in the unlucky guy, it keeps going. That's what PMF is. Or you can have more dust burden and more scarring at the site of that new dust burden. That's why you get out of the coal mine. You eliminate one of the three ways. And the third is just a combination of the two. So, yeah, I can reconcile all those. You look at them one at a time. They don't conflict with each other. I don't know if that answered your question sufficiently, but I feel that it's fairly clear. Now, should I start with this part? May it please the Court? I'm Bruce Vossor. I represent Travalia. I represent all of Eubanks. All of Consol's issues are manifest weight arguments, and my burden today is only to point out where there's support in the record part. I'm going to try to limit it to that, keep it short. It doesn't look like Consol contested that Mr. Eubanks has pneumoconiosis. But even if it had, the decision of commission that he did have pneumoconiosis wasn't against the manifest weight of the evidence. His x-ray was read positive by Dr. Alexander. He's a qualified bee reader. And pneumoconiosis was diagnosed by the examining pulmonologist, Dr. Gerber. Dr. Gerber did examine at the request of Mr. Eubanks. But he wasn't paid for that exam. He wasn't paid for his deposition. There's enough support in this record to find pneumoconiosis. On the 1F issue, it's obvious that the commission found Dr. Alexander to be credible because they found disease. Therefore, it was reasonable for the commission to believe Dr. Alexander's bee reading of the 1994 x-ray is positive too. And once they accepted that diagnosis of pneumoconiosis in 1994, as I've already said, the proof of disabling had already been given by Westerville and Gerber. Westerville said that when he diagnoses a minor with pneumoconiosis by x-ray, the absolute first thing to do is to advise him to leave the mines. That's their expert. And even if the 1994 x-ray weren't in the record, any positive x-ray would defeat a 1F defense because Dr. Westerville, again, Consal's expert, said that if a person has pneumoconiosis at the time he examines him, at any time, the overwhelming odds are that he would have had pneumoconiosis at some level when he left the mining. It's kind of easy to figure out. Only one thing caused it, coal dust. If you didn't have it when you left the mine, after 28 years of daily exposure, and you leave the mine and have no exposure at all for five years, and now you've got it, where'd it come from? So he says you would have had to have it at some level when you leave mining if you got it at any time. So that would take care of disablement by itself. But both pulmonary pulmonologists, as I said, also said you can't have pneumoconiosis without pulmonary impairment. You may not be able to measure it, but it's there because you can see it. There was support in the record for the Commission's findings on disablement and also timely disablement. And just a couple of comments on notice. A petitioner is required to give some form of notice. And in this case, and every other black-bone case I know of, that doesn't mean it's dispositive. I don't know of it. But notice is given by way of filing a claim. That's just the traditional way it's done. I don't think Consal is saying it didn't get the application. It's just saying the application isn't good enough. But Consal didn't say what would be good enough. But even if the app were considered to be defective notice, Consal would still have to show the timing of the defective notice prejudices, and Consal hadn't argued that it was prejudiced in any way. How could they? They had a full pulmonary exam, a B-reading, access to the treatment records, and a B-reading of the chest x-rays taken 11 years before he left Miami. That's kind of the nature of the disease of pneumoconiosis. When you get notice, you can always go back and get everything you want, and the case never gets a trial until you get it. And Consal wasn't in much of a hurry because he didn't have Westfield examine Mr. Eubanks for over two years after the claim was filed. The finding that the notice was adequate wasn't against the manifest weight of the evidence because there wasn't any evidence of undue prejudice at all. And the last issue was nature and extent. The commissions to be awarded substantial deference on that issue, and the award was only 7.5%, and that was more than fair to Consal. It's at the low end for pneumoconiosis by x-ray awards. Now, I do want to address some of Consal's individual arguments. In his brief, at page 23, Consal said, the commission's finding of disablement, quote, is based on the finding of pneumoconiosis and the complaint of sharpness of breath, but that's not how the decision reads. In the conclusion section decision, the phrase sharpness of breath isn't mentioned once. And in the single reference to the word symptoms, the only comments are that they were real and that they improved capillary function. In other words, the commission took that into account. They knew about the heart problems. They knew that the symptoms improved. Sharpness of breath was not what they were talking about. The ruling on 1F was made because of the 1994 positive x-ray by Dr. Alexander. They said so. And the testimony by both experts said pneumoconiosis causes functional impairment. Even if the commission had made its 1F ruling based on its perception of Mr. Eubank's sharpness of breath, it wouldn't be against the manifest way. They have that ability to do that. But they didn't do it. Now, Consal wasn't happy with the chronology of the evidence. He wasn't happy with Dr. Alexander's reading of the 1994 x-ray because he didn't read that x-ray until 11 years after it was taken. But here's their problem. There isn't any evidence in the record that x-ray films degrade over time and that a film from 1994 would have been less probative or valuable than one taken today. Consal is not satisfied with the decision because it says Mr. Eubank didn't leave mining because of his pneumoconiosis since he didn't have a positive B reading until 5 years after he left mining. Well, he said he left mining because he couldn't do the job anymore due to his breathing problems. He didn't know what disease he had until later, but he did leave the mines because of breathing problems and he got a lower pension to cause it. It was a serious decision. Now, none of what I'm saying right now is necessary for the commission to make the award, but it does answer questions Consal raised. All of the conclusions of the commission were supported by substantial evidence and the decision was in accordance with the law and I asked that it be affirmed. Looking over my notes here, you already asked me the question when I first got up here that I'd written some notes on, so thank you. Thank you, Consal. Rebecca, please. Your Honor, Mr. Brezor stated that we had misstated the fact that the commission's decision was based on co-workers' pneumoconiosis and shortness of breath. And two minutes after that statement, Mr. Brezor stood here and said that Mr. Eubanks left the mine because of breathing problems, which the breathing problems were shortness of breath. Now, whether or not the commission thought that the shortness of breath was due to the cardiac condition or to co-workers' pneumoconiosis, to me it seems like they have found that they are related to co-workers' pneumoconiosis. But without going any further into that, the question remains the same. And while I respectfully disagree with Your Honor that the White case actually had notice filed within the 45-day time limit, in the event that I am wrong, then I would agree that prejudice would become an issue as long as the case was timely filed and notice was given in the time frame necessary. I do believe that if Section 6C is to have any merit whatsoever, that it has to have something other than we got it filed in time in the five years. Otherwise, it has no value and it doesn't do anything for anybody. And it goes back to Section 1F, which says you have to prove disablement within two years of your last date of exposure. As Mr. Bezor stood here and said, the chest film that was initially read was not read until July of 2003, which was over five years after he left the mine. So when you talk about notice and prejudice, if you're dealing with a case that's filed nearly five years after someone leaves the mine, chest film is read two months, three months later, and you're going to say there's no prejudice because the notice is close enough to the end of the five years, and you're going to say, well, as long as you've got co-workers' pneumoconiosis, which is what Mr. Bezor said, as long as you have co-workers' pneumoconiosis, you're disabled. And that's good enough for 1F? Well, now 1F has absolutely no statutory value any more than 6C does. And as long as you file a claim within five years of your last date of exposure and somewhere down the road someone reads a chest film that's positive for co-workers' pneumoconiosis, you're supposed to be awarded benefits. And I don't think that's what our statute's intentions were. I think they've set forth time limits for a reason, and if you look at the chronological action in occupational disease claims, which changed the statute of limitations from an original time period of one year to its current status, clearly some of these dates have to matter, and you can't just do all of this stuff five years after you file a claim and think you've met the statutory requirements. I mean, otherwise, you might as well get rid of Section 1F, Section 1E, Section 6C, and say, here you go. As long as you get it filed within five years, we're going to pay you. And that's essentially what they have done in this case. And we're asking this Court to reconcile all of those facts together. Thank you. Thank you, Counsel. The Court will take the matter under advisement for disposition.